Good afternoon, your honors. May it please the court. It's still morning here. Good morning, your honors. May it please the court, my name is Ari Karakalos. I'm here representing appellant David Allen Berry on habeas corpus. Okay. This case, I believe, presents one of the more interesting Catch-22s that I've seen. Here we have two defendants, husband and wife, being tried together on pretty much the same charges in the same trial before the same judge. We have the same prosecutorial misconduct involving the introduction of an inadmissible e-mail, which inculpated both my client, appellant, his co-defendant, his attorney. We have the same curative instruction given, which supposedly instructed the jury to completely disregard this e-mail, and which supposedly, according to the trial court, according to the court of appeal, according to the district court, was followed in its entirety. We have the same objections that were raised by both co-defendants at trial. We have almost identical motions for a new trial brought. We have those motions heard before the same judge on the same day. And yet, despite all these similarities, we have absolutely diametrically opposed rulings on these motions for a new trial. And it's our contention that that violates appellant's right to due process, because the trial court is applying one standard for Sixth Amendment right confrontation issues and one standard for Fourteenth Amendment due process rights issues in terms of how it's weighing prejudice. Because in one situation, it clearly finds that there was prejudice against Ellenberry. And in the other situation, other situation, I use that term broadly because it's essentially the same situation. But as it applies to the Fourteenth Amendment, the court finds that the jury, the curative instruction to the jury was sufficient. It just doesn't make sense. It's an unreasonable application of, it's an unreasonable determination of the facts in light of the evidence presented. And under 28U, under EDPA's section 2254 subsection D, that's reversible error. Was this argument made to the courts of appeal or the state courts? This argument was made to the state courts. Specifically this argument. Yes. Okay. And ironically, you know, the email that we're talking about that came in by the prosecutor on numerous instances in violation of the clear instructions of the trial court that this email was not to come in. Ironically, this email references Ellenberry only in passing. It mentions her in terms of, in other words, it's an email from David Berry, from appellant, my client, to Horniak regarding certain inadmissible facts that should never have come before the jury. Why wasn't an objection made at the time the counsel started reading that letter? Why wasn't some objection made then to its admissibility? I don't, I didn't see any anyway. You mean immediately then? Yes. I agree. It probably should have been. But it was made soon after. And sometimes, you know, as humans, you know, you don't realize what's happening until a little bit after the fact. And I think that's what was happening here when you read the transcript. But the issue had been discussed in advance of trial about this letter. Is that true? It had been discussed, yes. And the judge had made it clear that this was not to be referenced. This email was not to come in. Yet the prosecutor not only references it, but introduces it, but lets the witness read from it, directly from it. The court of appeal, the district court, all agree that this goes beyond a grave error on the part of the prosecution. The state court found it was prosecutorial misconduct. Right. Exactly. But then when it comes down to the issue of resolving whether or not the jury's instructions were curative enough, as to my client David Barry, he's found, no, it's fine. It took care of the 14th Amendment problem. But in no way did it take care of the 6th Amendment problem as to Ellenberry. And it just doesn't make sense because it's the same analysis when it comes to prejudice, when it comes to harm. If we take the face value of the findings of the court of appeal, if we take their findings that the jury's curative instructions, in fact, worked, then no 6th Amendment problem arises as to Ellenberry. But that's not what the trial court found. Didn't they, at least the trial court, was concerned about a right to confrontation and a prudent problem, wasn't it? They were. They were. But if we look at that prudent opinion, it's interesting because both prudent and aranda still allow for a prejudice analysis, and that's what's being employed here by the trial court, is clearly a prejudice analysis. Well, you're saying that he might have erred in not making a prejudice analysis for Ellen? No, I think he made a prejudice analysis to Ellen, and he said this. Whatever he finds with respect to the co-defendant has to apply to the other defendant automatically. Right. Either you deny the motion for a new trial here and here, or you grant the motion for a new trial here and here. It's the same issue because it's the same prejudice analysis. Granted, they're different constitutional grounds, the 6th Amendment confrontation. Well, but the substance of the email was that it was your client who was writing it. Correct. His statement. Correct. It was his wife, too, and so it implicated him. It implicated him. Right. It also implicated his wife. Well, it did, but the weight of a trial judge could legitimately decide that the impact, the prejudicial impact, could be differentiated under Bruton. Isn't that correct? I don't think that the cases that even say that are analogous at all because in those situations you have one defendant and you don't. I'm talking about a Bruton analysis. You're talking about a Bruton analysis. Yeah. And that's what I'm saying is that the Bruton analysis allows for this prejudice component. If we look, for example, let me read a passage from the Bruton case, which I think highlights this whole issue very clearly. It says, Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error, unavoidable through limiting instruction. Instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. A defendant is entitled to a fair trial but not a perfect one. So he says there is this possibility that sometimes a curative instruction to a jury will suffice to take care of the Sixth Amendment confrontation problem. But here the trial court found that it wasn't enough for Allen. For Allen. And because it wasn't enough for Allen, how could it have been enough for David? It's the same prejudice. Granted, it's on different constitutional amendment grounds, but it's the same prejudice analysis. If a jury instruction worked in the Sixth Amendment context, it must also work in the Fourteenth Amendment context. Your argument largely is one based on equality. That is, that whatever he did for one he had to do for the other. Does the fact that the court of appeal decided that the instruction was curative and that there was no error in proceeding with your client's trial, does that suggest then that perhaps the trial judge jumped too quickly in dismissing Allen from the case and that there would have been no prejudice had the trial judge decided to let her continue in the case? In other words, to try the two of them together. Why doesn't your equality argument work back the same way? I think that it's a factual question for this Court to determine as to whether or not it's an unreasonable application of the facts. And here, I mean, this is a fact. Let's suppose that we thought that the California court of appeal got this right as to your client. Wouldn't your argument about treating them equally then suggest that the trial judge jumped the gun with respect to Allen? Right. But I think that the importance of the matter here is of constitutional magnitude. And so I don't think you can make that risky assumption that, well, the trial judge simply got it wrong for one person and right for the other person. But that is exactly your argument, that he got it wrong for one person and right for the other. Right. And that he shouldn't have. Yeah. I guess I'm misunderstanding your question. I'd like to tell me why this is an unreasonable application of the facts rather than tell me that he has to be treated the same as somebody else. Well, I think we need to take it as is there a likelihood of prejudice here? And is there any evidence that there was a likelihood of prejudice? And if there is, I think we need the default on the side of then if there was, we need to apply it in both contexts. And because the trial judge clearly found that there was prejudice, that there was harm that occurred to Ellenberry, then I think that is the. . . There's no question about the misconduct of the prosecutor. Right. The Court of Appeal itself is all over this. Right. So there's no question. Absolutely unequivocal, the prosecutor was out of bounds. Okay. The prosecutor was wrong. The question was, was there prejudice? Could it be cured by an instruction to the jury? The Court of Appeal says, yes, it can be cured by an instruction to the jury. Now, why is that an unreasonable application of these facts? It's unreasonable because the same trial court had already found in the same instance, essentially. Oh, and what I'm suggesting is, Counsel, is perhaps the Court of Appeal disagreed with the trial judge on that ruling. But that ruling was not before them. That ruling, they didn't have any reason to have to review that. I don't know that I have an answer to that question. I think. . . Well, we'll give you a minute on rebuttal. Okay. Whatever you think of when. I'd appreciate it. All right. Thanks. Good morning, Your Honors. May it please the Court. Megan Beale, Deputy Attorney General, on behalf of Appellee Warden. Your Honors, if I could first. . . I believe this issue was presented to the State court, but not as strongly as it's being presented here. I mean, Ellen's, what happened to Ellen certainly wasn't before the State court on direct appeal. And that is legally irrelevant to what happened to David Berry. More importantly, while counsel for appellants concentrated on the similarities here, there's really significant differences. There's differences in the actions of each parent towards the children. And there's differences, the major differences, that David Berry wrote the e-mail. Ellen didn't. Appellant could have gotten up and testified in his own defense if he felt it was necessary or wise. Well, of course, in that case, then there's a traction in the argument is that David Berry did not have prejudice of the prosecutor's misconduct forcing him to waive his Fifth Amendment right not to have to testify. I don't think that would be a very plausible outcome. Your Honor, what happened here is because of the trial court's very firm, very quick admonitions to the jury, because he polled the jury and asked them if they could be fair and impartial. That's not responding to my question. You're arguing that if a prosecutor can effectively force the defendant to waive the Fifth Amendment, to take the stand, to overcome the prejudicial effect of prosecutorial misconduct? Is that your position? No, Your Honor, not certainly. I would hope not. You just lost the case if that's your argument is the best way to cure prejudice. No, absolutely not, Your Honor. Absolutely not. But certainly, defendants' prior admissions can be presented in court by the prosecutor. Well, that's true, but not through misconduct. Not through prosecutorial error. Absolutely not through prosecutorial error. You have to accept that there was prosecutorial misconduct. I accept that. Well, you have to because the state court found it. Both the state courts found it. The trial court found it and acted to correct it immediately and firmly. The state appellate court raked the prosecutor over the coals for her actions here, but nonetheless found that the actions of the trial court were sufficient to end polling the jury, showed that there was no lasting prejudice in this case. And, again, you have to look at the totality of the circumstances, the entire two-week trial that happened here. And, again, Your Honor, talking about what happened to Ellen, I think you also have to I want to jump back a minute because you said at the outset of your argument that the argument that we're spending a lot of time on now today was not presented that way to the court of appeal. Are you arguing or not arguing that there was a failure to exhaust this argument? I am not arguing that, Your Honor. Okay. So I just want to make sure. Okay. So now the question is, even though the state courts did not have before them to rule on the validity of the mistrial motion grant to Ellen, there was enough in there to have the opportunity to address this inconsistency argument that's being made today? Correct. All right. Correct. The inconsistency was clear to the state courts. It was not the emphasis of the argument at that time, but it was before the state courts, the inconsistency. And I think another thing that we could look at is the actions of Ellen here towards the children, the actions of the jury. You know, Ellen was found not guilty of any felonies whatsoever. She was found not guilty of the two specific events of counts one and four, the two events of the night before the children were taken. And she was found guilty only of misdemeanors on the continuing abuse. And it could be that the court, the appellee contends that the trial court was just where legally it did not need to be granted because of the firm admonitions of the trial court. It also is important to note here, and I apologize, I didn't really emphasize this in my briefing, but Appellant, of course, was found guilty of only one out of five felony charges. There were five felonies brought against him. There was certainly evidence in the record that would support all five felonies, and yet the jury found him guilty of the one felony of bruising Austin's ears on the night before they were taken and found him guilty of lesser-included misdemeanor offenses on the other counts. And so the jury was not prejudiced against Appellant or his attorney because they did not find all that the prosecutor was asking for. They didn't find him guilty of five felonies. They only found him guilty of one felony that was objectively verified by the teacher and the doctors who saw Austin the next morning, and they found him guilty only of misdemeanor lesser-included offenses on the other charges. If they had been prejudiced against Appellant, they would have found him guilty of all the five felony charges because the appellee contends there was sufficient evidence in the record to support felony charges on all five counts. I suppose the counter to that would be they would have acquitted him of everything, but the e-mail sort of made them feel that he was guilty of something, so that was their compromise verdict. We're going to start speculating. That's the counterargument. And again, I would submit that there was objective, verifiable, independent evidence of the injuries to Austin, and so it would have been difficult, people believe, for the jury to find nothing in regards to count one because of the visible bruising on both ears and the lump on his jaw. One of the things that the trial court did was not only admonish the jury to disregard, but it went out of its way in particular to vouch for the bona fides of defense counsel. Now, in doing that, is there any risk that the defendant was damned by faint praise in comparison? In other words, with the judge reaching out to not only say, don't pay attention to this, but I'm then going to take the extra step as far as counsel is concerned, is there any risk that the defendant was damned by faint praise in comparison? I mean, is there any risk that the defendant was damned by faint praise in comparison? No, Your Honor. Along with the instructions that the jury followed, one of the instructions that's given in this case and given in all cases is that the judge tells the jury that he does not intend to give any viewpoint on the evidence in the case. And moreover, one has to look at this was a two-week-long trial, and I know that the court has reviewed the entire record, but this was a very difficult case, reading and for many reasons. You know, these three children testified. They were traumatized. The judge mentioned how traumatized they were. They also had the interviews from the time of 2001, right when they were taken, which were very, very different in tone in terms of what the children said at that time and then what they said two years later. But if you look at the context of the entire case, it really would require that people contend gross speculation to think that this email would influence the jury so much that it would deprive an appellant of a fundamentally fair trial in the context of the entire trial, the entire jury instructions and the firm admonition given by the court to completely disregard the email at all. The trial court did vouch for Mr. Barnett, but it emphasized to the jury several times not to consider the email in any way, and it was never mentioned again after that incident at the end of the trial. It wasn't mentioned in closing argument at all. And so in the context of the entire lengthy trial of all the evidence that was put on, and again the trial court's comment that the defensive evidence of the reactive attachment disorder was not very persuasive in his opinion, and he didn't think that the jury was very much persuaded by that. And yet the jury nonetheless found both parties guilty mostly of misdemeanors and only the one felony as to appellant and not felonies as to the other appellants. And in sum, Your Honors, appellee contends that the State court's determination here that prosecutorial error occurred but that it was harmless, that appellant had a fundamentally fair trial, was not an objectively unreasonable decision, and we request that you affirm the opinion unless the Court has any further questions on the case we're prepared to submit. Okay. Thank you. I just want to address the unreasonable application issue here. And I think that there's strong evidence if we look at the wording of the trial court at trial and when this happened, and then we look at their behavior when it came time to rule on the motion for a new trial. As soon as this mistake happened, you know, the trial court said, I don't know this is close to a mistrial, quote, unquote. It said, I don't know how we are going to clean this up. I just don't think you can try a case so recklessly. Is this? And then I think one of the more important quotes that I've actually read, it's found in appellee's supplemental excerpts of record on page 24. At some point the judge says, there are some things that need to be covered with the jury because they're going to be concerned about the email, even though I tell them to disregard it. So the judge here himself is saying, the jury is going to be concerned about this email, even though I tell them to disregard it. So he's made an admission that no matter what jury instruction I give, no matter what curative instruction I lay forth, this jury is going to have a problem with this email. And I just think it's unreasonable to expect that a jury can do different mental gymnastics on a Sixth Amendment constitutional claim than we expect it to do on a Fourteenth Amendment constitutional claim. Okay. I appreciate that. Thank you. I appreciate the argument. Thank you very much. The case is submitted.
judges: Strom, Fisher, Bybee